# EXHIBIT E

LAW OFFICES
FINKELSTEIN & HORVITZ, P.C.
Suite 400 East
7315 Wisconsin Avenue
Bethesda, Maryland 20814
Telephone: (301) 951-8400
Facsimile: (301) 951-8401
Email: info@fandhlaw.com

MAR 1 1 2007

Nathan I. Finkelstein ★∗♦
Laurie B. Horvitz ∗∗

Robert J. Goldman ★∗♦
Emily D. Gooding ★

★ MD, ∗ DC, ♦ GA

March 8, 2007

**Via Facsimile and Regular Mail**
Michael L. Lisak, Esq.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 20814

Re:   **Glickman, et al. v. Bayer, et al.**
      **United States District Court for the District of Columbia**
      **Case Number 1:05-cv-2046**

Dear Michael:

I am responding to your letters regarding Plaintiffs' Rule 26(a)(2) Disclosures. In particular, I am addressing the points set forth in your letter, dated March 6, 2007.

1. **Michael Casparian, M.D.** – You have confirmed received of an executed report. I will provide you with proposed deposition dates.

2. **Warren Joseph, M.D.** – Enclosed is a report from Dr. Joseph. His report sets forth his hourly compensation for deposition and trial testimony. I will endeavor to procure a list of his deposition and/or trial testimony during the last four years.

3. **Harold Glickman, D.P.M.** – We will let you know this week regarding our intention to use Dr. Glickman as an expert witness. If we do so, we will provide you with a report.

4. **Treating Medical Providers**. As I explained to you on the telephone this week, the treating physicians have not been "retained or specially employed to provide expert testimony in the case." See Rule 26(a)(2)(B). The Rules do not require a written report from such persons. Similarly, the Rules do not

Letter to Michael Lisak, Esq.
March 8, 2007
Page Two

> require other disclosures relating to retained experts. Nonetheless, we have disclosed the identities of these persons because they "may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence." See Rule 26(a)(2)(A). With respect to these witnesses, we have not retained any of these treaters as expert witnesses. Nonetheless, we will be offering them for expert opinions at trial. As I explained on the telephone, they will provide testimony regarding their treatment and care of Mrs. Glickman, including any expert opinions, diagnoses, observations and conclusions that they reached during such treatment and care. In your letter, you seemingly want to narrow the scope of their testimony to matters "consistent with their respective areas of specialization." Please understand that they will offer testimony regarding the findings and opinions developed during their care and treatment of Mrs. Glickman, regardless of their precise areas of specialization. Of course, you may argue about the weight of such evidence at trial.
>
> You also asked about Dr. Palmer's anticipated testimony. He would be called as a treating physician, not as a retained expert. As we have stated consistently, you may take his deposition. We will not object to such a deposition at this juncture, despite the close of factual discovery.

5. **Additional Medical Providers**. You have stated our position correctly with respect to additional treating healthcare providers. As necessary, we will supplement our prior discovery responses. Of course, we reserve the right to retain additional medical experts for impeachment and rebuttal purposes.

6. **Persons from the FDA**. You previously have suggested that FDA expertise will be necessary in this case to explain the drug labeling process. Although we do not necessarily agree with that contention, we reserve the right to call FDA employees at trial to explain, in part, the role of the FDA, the applicable laws and regulations that govern labeling, the labeling responsibilities of the drug manufacturers under the current regulatory regime, and the specific labeling issues relating to fluoroquinolones. To the extent that such testimony is evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence, we have identified this category of anticipated testimony. Our use of such testimony is not wholly dependant upon the Defendants' expert reports. It may be offered in Plaintiffs' case in chief. Because FDA personnel have not been retained or specially employed to provide expert testimony in this case, we are not required to produce any written report. However, such personnel may nonetheless offer expert testimony relating to their duties and expertise at the FDA. To the extent that such opinions support Plaintiffs'

Letter to Michael Lisak, Esq.
March 8, 2007
Page Three

case, such testimony will be introduced by the Plaintiffs as part of their advocacy of the case.

I trust that this letter responds to your latest inquiry.

Very truly yours,

Laurie B. Horvitz

Enclosure

# WARREN S. JOSEPH, D.P.M.

*CONSULTANT*
*LOWER EXTREMITY INFECTIOUS DISEASES*

March 7, 2007

Nathan I. Finkelstein, Esq.
Finkelstein & Horvitz P.C.
7315 Wisconsin Avenue, Suite 400 East
Bethesda, MD 20814

      Re:  **Glickman, et al. v. Bayer Corporation, et al.**

Dear Mr. Finkelstein,

Pursuant to the above captioned matter I have reviewed extensive medical records of Sherill Glickman and the provided information pertaining to ciprofloxacin and tendon issues.

By way of background I am a podiatrist with fellowship training the specialty of Infectious Diseases. For the past 20+ years I have practiced podiatric medicine with a concentration on the treatment of lower extremity infections. I lecture and have written extensively on the topic of antibiotic therapy for foot and leg infections. I am a Fellow of the Infectious Diseases Society of America and a Member of the American Society for Microbiology and follow the scientific literature published by both organizations.

My involvement with Cipro began about the time the oral formulation was first approved in the late 1980s. I have used the drug extensively and have written and lectured about it. Soon after the drug was released I lectured to the Miles sales force at a meeting in West Haven, CT about the use of the drug in lower extremity infections. The issue of tendinopathy and rupture first came to my attention around the mid 1990s. I obtained this information from my close following of the infectious diseases and antibiotic literature. I did not receive any letters from the Bayer, hand-outs from Bayer drug representatives, or other communications from Bayer or its representatives relating specifically to the tendon issue. I have no recollection of a Miles/Bayer sales representative ever specifically talking to me about the potential of tendonitis and tendon rupture. Furthermore, the idea that the rupture could occur months after the drug had been discontinued was never discussed by any representative.

Although the FDA requested that Bayer add language informing physicians that the tendon damage can occur even "after" the discontinuation of therapy, this wording was not added into the Package Insert until 2004. This was a number of years after Sherrill Glickman was placed on the drug. Also of note is that other quinolones, such as Levaquin, added this requested labeling before 2000, i.e., before the treatment given to

Mrs. Glickman. In my opinion, this difference among fluoroquinolone labels was not supported by persuasive medical or scientific distinctions between the applicable drugs.

My charge for a deposition is $1500 for up to the 1st 3 hours and then $500/hour for each additional hour. My trial appearance fee is $3500/day plus expenses. If you have any questions or I can be of any further assistance please do not hesitate to contact me at any time.

Sincerely Yours,

Warren S. Joseph, DPM