**EXHIBIT G**

LAW OFFICES
# FINKELSTEIN & HORVITZ, P.C.
SUITE 400 EAST
7315 WISCONSIN AVENUE
BETHESDA, MARYLAND 20814
(301) 951-8400
Facsimile (301) 951-8401
Email: info@fandhlaw.com

Nathan I. Finkelstein **✦                                        * MD, * DC, ✦ GA
Laurie B. Horvitz **

---

Robert J. Goldman **✦
Emily D. Gooding **

## FACSIMILE COVER SHEET

| TO: Michael Lisak, Esq. | FROM: Laurie B. Horvitz, Esq. |
|---|---|
| RE: Glickman v. Bayer<br>Superior Court for the District of Columbia<br>Case Number 05CA 0006217 | DATE: March 16, 2007 |
| FAX NO: 410-783-4040 | Number of PAGES incl. cover page 3 |

MESSAGE:

Please call 301/951-8400 if you do not receive all of the pages.

*****************

This transmission is intended for the sole use of the individual and entity to whom it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. You are hereby notified that any dissemination, distribution or duplication of this transmission by someone other than the intended addressee or its designated agent is strictly prohibited. If your receipt of this transmission is in error, please notify this firm immediately by collect call and send the original transmission to us by return mail at the above address.

03/16/2007 16:58 FAX 3019518401        FINKELSTEIN & HORVITZ PC                  ☑002/003

# EXPERT REPORT OF
# DR. HAROLD BRUCE GLICKMAN
# ON CIPRO

I.   **Introduction**

I am Dr. Harold Bruce Glickman, a doctor of Podiatric Medicine. I am licensed to practice in the District of Columbia and the State of Maryland. I have been in private practice in the District of Columbia since 1975. I received training and completed both my internship and residency at Giuffre Medical Center, in Philadelphia, Pennsylvania. I am actively involved on a day-to-day basis in the practice of Podiatric Medicine. As part of that practice, I prescribe medications that are approved by the Federal Drug Administration (FDA).

II   **Cipro PDR Review**

I have reviewed the PDRs for 2001 and 2002 regarding the drug commonly known as Cipro. Based on a reasonable degree of certainty, it is my opinion that these PDRs did not adequately advise treating medical providers, such as myself, of the known risks of Cipro in 2001 and 2002.

Sherill Glickman received Cipro both by IV administration and tablet form. She was not advised through the PDR or package inserts fully and accurately of the known risk of tendon shredding that was associated with the consumption of Cipro. Particularly, the labeling did not advise that, after the conclusion of a course of Cipro, a patient could still suffer from tendon ruptures. It was my understanding, based on the PDR and my contacts with drug manufacture representatives from Bayer, that any tendon ruptures would occur when the medication was actually being taken. Furthermore, in my opinion, there was little information contained in the PDR which would lead a reasonable healthcare provider to conclude that a non-lactating, non-pregnant, non-pediatric patient, such as Sherill Glickman, would have a risk of serious tendonopathy, resulting in shredding tendons, and the need for surgical repair. The bold print warning section leads one to believe that these warnings are designed for lactating mothers, pregnant women, and pediatric patients, rather than persons fitting the profile of Sherill Glickman.

As a treating healthcare provider, I use the PDR as a source for knowing adverse risks and warnings that are associated with a drug. My review of the 2001 and 2002 PDRs for Cipro leads me to conclude that these publications did not provide adequate disclosure regarding the known risks. I am aware that, as early as 1996, the FDA asked the quinolone manufacturers, including Bayer, to add warnings to Cipro's labels that the tendon symptoms could occur after the completion of the course of treatment with the drug. It is my understanding that other manufacturers had put the requested warnings in their labels prior to 2000, however, this information did not appear in the package inserts or PDR for Cipro

until 2004. Furthermore, as a treating healthcare provider, I am aware that the process at the FDA is one of negotiation with government officials and that the warnings are considered minimum standard.

### III. Risks

I have attended numerous seminars and continuing medical education meetings where various drugs are discussed. Never did I hear anyone from Bayer advise of the real risks of Cipro and the fact that tendonopathy such as what Sherill Glickman experienced was a known risk. Furthermore, drug representatives regularly came to my office and provided samples of Cipro. I depended on these drug representatives to keep me up to date on the latest information regarding the drugs, especially information relating to their efficacy and safety. It is my understanding that the drug representatives for Bayer were instructed not to voluntarily provide information that was known to Bayer about Cipro, but rather to only respond to specific questions raised by medical providers.

### IV. Conclusion

In conclusion, it is my opinion that the warnings that were given in the PDR and drug labels for Cipro during 2001 and 2002 were inadequate to advise treating healthcare providers of the known risks of Cipro.

*Hawed B. Glickman DPM*
3-15-07