IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHERILL GLICKMAN, et al., | * | |
| Plaintiffs | * | |
| v. | * | Civil No. 1:05-cv-2046 |
| BAYER CORPORATION, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE PLAINTIFFS' EXPERT WITNESS AND FOR SANCTIONS**

I. **INTRODUCTION**

Plaintiffs, Sherill Glickman and Harold Glickman, by and through their undersigned counsel, respectfully submit this memorandum in opposition to Motion to Strike Plaintiffs Expert Witness and for Sanctions ("Motion").

In the Motion, Defendants are seeking to exclude one of the Plaintiffs' experts, Dr. Harold Glickman. Plaintiffs identified Dr. Glickman as an expert on the deadline for such designations. At that time, Dr. Glickman's curriculum vitae was transmitted via facsimile. He already had been deposed in the case as a fact witness and party to this action. Thereafter, an executed written report was provided from Dr. Glickman. Although the Defendants had received a timely identification of Dr. Glickman, a brief summary of his anticipated testimony, a resume and a written report, they nonetheless filed the Motion. They are seeking to strike Dr. Glickman as an expert based upon the date on which the expert report was produced. Moreover, they object to expert testimony from a party plaintiff. Defendants have not established any prejudice and have not set forth any persuasive grounds for the requested relief.

1

## II.   BACKGROUND

### A.   Cipro Labeling and Warnings

This case involves the prescription drug Cipro and the adequacy of warnings relating thereto. After consuming several rounds of Cipro, Plaintiff Sherill Glickman developed severe tendon ruptures which required surgical treatment. One retained expert and several treating physicians will opine that the tendon tears were causally related to Ms. Glickman's exposure to Cipro.

One of the central issues in this case is whether or not the warnings that Bayer gave regarding Cipro were adequate in 2001 and 2002. It is the Plaintiffs' position that the warnings were insufficient to advise a reasonably competent medical provider of the known risks of the drug relating to tendon disorders. The Defendants have taken the position that their package inserts and entries in the Physicians' Desk Reference ("PDR") provided adequate information for prescribing doctors relating to tendon ruptures.

With respect to this issue, there is considerable evidence upon which the expert testimony will be based. The evidence will show that the FDA asked Bayer in 1996 or before to include additional warnings regarding tendon damage in their written materials. Concurrently, the FDA asked manufacturers of drugs in the same class of quinolone drugs to add stronger warnings. Bayer objected to the insertion of the additional warnings and did not add the requested language until 2004, i.e., <u>after</u> Plaintiff received the drug. By contrast, other manufacturers of quinolones promptly added the FDA's requested warnings.

In 2001 and 2002, the information that was disseminated by Bayer was difficult to understand by a reasonably competent medical provider and incomplete. During this time period and before, Bayer's sales representatives were told that they should reassure practitioners that certain publicized complaints about tendon disorders were sensationalistic. In order to receive more information about the issue, practitioners needed to inquire. They were not advised of changes to the package inserts relating to tendon issues. Apparently, Bayer maintains that it does not have any ongoing duty to advise prescribing healthcare providers of changes in package inserts and PDR entries for Bayer's established drugs.

It is also clear that Bayer will attempt to use the FDA approval process as a shield from liability. It seeks to avoid responsibility for making complete disclosures regarding drug risks based upon FDA approval of labeling.

### B. Dr. Glickman's Professional Experience and Anticipated Role in the Case

Dr. Harold B. Glickman has been a treating podiatrist for over 35 years. During that period of time, he has dispensed numerous prescription drugs, including Cipro. He is familiar with the PDR and procedures undertaken by drug companies to advise health care providers and patients of the efficacy and safety of drugs. He is competent to testify regarding the manner in which prescribing healthcare providers utilize package inserts, PDR entries, and information communicated by drug representatives. Notably, Cipro had been marketed in the United States for more than a decade before Ms. Glickman received the drug. Accordingly, changes to the labeling were buried in PDR entries for the established drug. Dr. Glickman will testify regarding the means by which

prescribing healthcare providers determine newly appreciated risks for established drugs.

Plaintiffs believe that it is essential to have Dr. Glickman testify in this case. His testimony will help the trier of fact understand how treating health care providers become aware of the risks of a drug and how dependent they are on the drug manufacturers to advise of these known risks. Dr. Glickman is expected to testify that in 2001 and 2002 the known risk of tendon damage caused by Cipro was not being disclosed to health care providers in a meaningful manner so that they could properly advise their patients, make an informed risk assessment, and care for their patients.

### III. ARGUMENT

#### A. Dr. Glickman was designated as an expert in a timely fashion.

Dr. Harold B. Glickman, DPM was designated as an expert on February 28, 2007, i.e., the deadline for expert designations. The fax cover sheet and fax header show that the designation was transmitted to Michael Lisak, Esq. on that date via facsimile. See Motion at Exhibit B. With respect to that designation, Plaintiffs described the general nature of his anticipated expert testimony and attached a resume.

It was not clear whether an expert report was required in conjunction with Dr. Glickman's designation. He had not been specially retained by the Plaintiffs to provide expert testimony. He does not regularly give expert testimony as an employee on behalf of his employer. Instead, he is a party to the action. See Fed. R. Civ. P. 26(a)(2)(B) (reports relate to experts who are "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly

4

involve giving expert testimony"). When counsel for the Defendants asked for a written report, Plaintiffs provided one.

Plaintiffs were not purposefully withholding information or blatantly disregarding the scheduling order

### B. Defendants May Take the Expert Deposition of Dr. Glickman

Plaintiffs agreed to submit Dr. Glickman to a second deposition for questioning regarding his expert opinions. Counsel for the Plaintiffs communicated this position to the Defendants before the Motion was filed. See Exhibit 1 hereto.

Despite these circumstances, Defendants complain that they were not permitted to explore Dr. Glickman's expert opinions when he was deposed on October 20, 2006. However, Dr. Glickman had not been designated as an expert at the time. In October, the Plaintiffs had not yet decided to use Dr. Glickman as an expert. Accordingly, Plaintiffs properly objected to questions regarding expert opinions. Defendants never moved to compel further responses at the time. Four months later, Plaintiffs decided to designate Dr. Glickman as an expert and did so on the prescribed deadline.

The decision to designate Dr. Glickman was precipitated, in part, by the costs of retaining additional experts and information that had been adduced during discovery. The Defendants produced over 350,000 pages of documents in this case. Key documents relating the labeling issue were buried in this production. The core evidentiary documents needed to be produced a second time due to apparent technical problems with the initial production. Although Defendants certainly cooperated with such efforts, this chronology of events delayed the case and required a prior

continuance. It also delayed Plaintiffs' decision to designate Dr. Glickman as an expert witness.

In sum, Plaintiffs properly objected to certain deposition questions that were directed to Dr. Glickman before he was designated as an expert witness. Under these circumstances, Plaintiffs have agreed to submit Dr. Glickman to a second deposition so that those issues can be explored. This week, Plaintiffs provided available dates for Dr. Glickman's expert deposition.[1]

### C. Dr. Glickman's opinions will assist the trier of fact.

As stated above, the issues in this case include whether or not the package insets and PDR adequately warned of the known risks of Cipro during the relevant timeframe. The issue is more specifically whether or not reasonable health care providers were properly warned by Bayer through the PDR and other information of the known risks of Cipro. Dr. Glickman's opinions will assist the trier of fact. Under Rule 702, a witness can be qualified as an expert by: knowledge, skill, experience, training or education. He can be designated as an expert if he has scientific, technical or other specialized knowledge which will assist the trier of fact to understand the evidence or determine a fact in issue. The opinions and testimony should be based on facts and data sufficient to form the opinions and the testimony should be the product of reliable principles and methods. Fed. R. Evid 702.

Under Rule 702, Dr. Glickman's testimony would be helpful in the trial of this case. He has been a healthcare provider for more than 35 years. During his tenure as a healthcare provider, he has learned about various drugs which are regulated by the

---

[1] According to a recent e-mail communication from counsel, Defendants do not intend to note Dr. Glickman's deposition until after the Court rules on the Motion.

6

FDA. Furthermore, he is familiar with the PDR. In this capacity, he has gained knowledge through his education and experience which would enable him to opine as to the practices undertaken by prescribing health care professionals to determine the risks and benefits of a drug. He will explain the materials and communications upon which practitioners rely, including information from drug representatives and package inserts.

Regarding the risks of tendon rupture, he has reviewed the PDR/package inserts as those entries relate to Cipro and other fluoroquinolones. He will opine that the PDR and package inserts for Cipro did not adequately warn a reasonable health care provider of the known risks at the time. Furthermore, based on his knowledge of this case and his experience, he is aware that Bayer knew or should have known of risks relating to tendon ruptures arising after Cipro treatments. In his opinion, Bayer should have provided more thorough warnings in the PDR and packages inserts to enable health care providers to ascertain the risks of Cipro, care for patients, and monitor symptoms arising after completion of Cipro. In part, Dr. Glickman will help the trier of fact by explaining that the PDR and package inserts did not properly warn medical providers of the known risks.

### D. Bayer has not been prejudiced by the designation.

Bayer has not been prejudiced by the designation of Dr. Glickman. On February 28, 2007, Plaintiffs designated Dr. Glickman and stated that he woulld be testifying regarding the practices of drug representatives in the medical office setting and the general use and review of drug labeling by practitioners. The designation included Dr. Glickman's Curriculum Vitae. When asked about a written report, Plaintiffs indicated

that they were still deciding whether to utilize Dr. Glickman as a witness and would provide a report once that decision was made.

Thereafter, Plaintiffs produced a report from Dr. Glickman. The delayed production of the report did not prejudice the Defendants. Notably, Plaintiffs' Counsel agreed to an expert deposition of Dr. Glickman and will consent to an appropriate extension of the Defendants' deadlines. See Exhibit 1.

### E.   Parties May Serve as Expert Witnesses

Defendants have objected to the expert testimony of Dr. Glickman because he is a party to this action. Yet, they have not cited any authority which would preclude such testimony from a party. Other courts have addressed this issue and permitted expert testimony from parties. See, e.g., Keystone Manufacturing Co., Inc. v. Jaccard Corp., 394 F. Supp. 2d 543 (W.D.N.Y. 2005) (Vice president and owner of plaintiff permitted to testify as expert); GSB Contractors, Inc. v. Hess, 179 S.W.3d 535 (Tenn. Ct. App., 2005) (expert may testify even if he has a financial stake in case). Dr. Glickman will be subject to cross-examination regarding his alleged bias. Such issues of credibility and weight do not justify the Defendants' efforts to exclude Dr. Glickman's testimony.

### IV.   **CONCLUSION**

Defendants have not established any basis for striking Dr. Glickman as an expert witness in this case. They also have not articulated any grounds for imposing a monetary sanction upon Plaintiffs. Defendants have not been prejudiced or harmed by Plaintiffs' designation of Dr. Glickman. In October of 2006, Defendants had no right to question Dr. Glickman about expert opinions. Defendants will be allowed to question Dr. Glickman again regarding his expert opinions during the expert discovery phase.

Modest delays justify an extension of the deadline for such depositions and for Defendants' expert designations. The requested relief is not warranted.

Of course, scheduling orders are important and should be adhered to. However, courts should not strike a witness such as Dr. Glickman without a showing of some prejudice to the Defendants. In this case, the Defendants have not shown any such prejudice. By contrast, Plaintiffs would be unduly prejudiced by this Court's exclusion of Dr. Glickman as an expert. His testimony will be both helpful and instructive to the trier of fact. Under such circumstances, his testimony should be permitted.

Respectfully submitted,

FINKELSTEIN & HORVITZ, PC

By: _____/s/_____
Nathan I. Finkelstein # 173682
Laurie B. Horvitz # 384702
Robert J. Goldman #481642
7315 Wisconsin Avenue
Suite 400 East
Bethesda, MD 20814
301-951-8400 (phone)
301-951-8401 (fax)
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served by E-Filing and by first class U.S. mail, on this 6th day of April 2007 to:

Michael L. Lisak, Esquire
Michael J. Wasicko, Esquire
Thomas J. Cullen, Jr., Esquire
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

___/s/_____
Nathan I. Finkelstein